USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/13/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLYNN JONES,

                Plaintiff,

-against-

DR. JOSEPH AVANZATO, *et al.*,

                Defendants.

---

No. 14-cv-2044 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Glynn Jones was a prisoner in Fishkill Correctional Facility ("Fishkill") when he brought this action *pro se,* pursuant to 42 U.S.C. § 1983, against Defendants Doctors Avanzato, Midelton, Supple, Asif, Hasen and Nurses McGuire, Simons,[1] and Sullivan. Plaintiff alleges that Defendants, medical staff at Fishkill, were deliberately indifferent to his serious medical needs, causing him to eventually lapse into a coma and suffer cardiac arrest. Before the Court is Defendants' motion to dismiss Plaintiff's complaint. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from Plaintiff's complaint filed on March 10, 2014 (the "Complaint") (ECF No. 2) and are accepted as true for the purposes of this motion. In early July 2011, Doctor Ramasre Karri, an employee of Fishkill's Mental Health Unit, ordered that a routine blood test be performed on Plaintiff. (Compl. ¶ 11.) On or about July 13, 2011, a member of Fishkill's Regional Medical Unit ("RMU") took Plaintiff's blood sample, which was subsequently sent to Bio Reference Laboratory for testing. (*Id.*) Upon receiving the results, on July 14, 2011, Nurse Sullivan ordered a retest, and four days later, Plaintiff's blood was drawn again. (*Id.* ¶¶ 12–14.) On July 19, 2011, Bio Reference Laboratory allegedly notified RMU that

Copies mailed/faxed 1/13/2016
Chambers of Nelson S. Román, U.S.D.J.

---

[1] Nurse Simons is referenced as Nurse Simmons throughout the complaint.

Plaintiff's blood test showed clinical abnormalities; his health was deteriorating daily; he was in acute renal failure; and he faced imminent danger of death without a blood transfusion. (*Id.* ¶ 15.) Nevertheless, thirteen days passed without Plaintiff being notified of his illnesses or being seen by anyone from RMU. (*Id.* ¶ 16.)

On July 27, 2011, Dr. Supple summoned Plaintiff to the medical unit and, after some discussion, informed Plaintiff that he was anemic and would need a blood transfusion. (*Id.* ¶ 17.) Dr. Supple took a urine sample from Plaintiff to examine it for blood and examined Plaintiff's body for cuts and stab wounds. (*Id.*) Plaintiff informed Dr. Supple that he felt weak, confused, dizzy, and nauseous; experienced shortness of breath; vomited daily; and had trouble walking to Fishkill's mess hall. (*Id.* ¶ 18.) Dr. Supple informed Plaintiff that he did not have a real medical emergency and should return to the sick hall if he continued to feel sick. (*Id.* ¶ 19.)

Three days after his visit to Dr. Supple, on July 30, 2011, Plaintiff requested to be sent to the RMU emergency room. (*Id.* ¶ 20.) A nurse in the emergency room took Plaintiff's urine sample and thereafter contacted Dr. Asif, who directed that Plaintiff be sent to the Putnam Hospital emergency room. (*Id.*) The medical staff at Putnam Hospital determined that Plaintiff was in acute renal failure. (*Id.* ¶ 21.) Plaintiff was hospitalized at Putnam Hospital for 12 days and returned to the RMU infirmary on August 10, 2011. (*Id.* ¶¶ 20–21.) The next day, Dr. Midelton discharged Plaintiff to Fishkill's general population, despite the fact that lab reports showed Plaintiff's health was deteriorating; he was in acute renal failure; he had light chain multiple myeloma bone marrow cancer; and he was in need of specialty care. (*Id.* ¶ 24.)

On August 18, 2011, Plaintiff returned to the RMU infirmary, where he was seen by Nurse Simons. (*Id.* ¶ 25.) At the infirmary, Nurse Simons listened to Plaintiff's complaints that he was weak, dizzy, short of breath, and had been vomiting. (*Id.*) She returned Plaintiff to his

2

housing unit without requesting that a doctor examine Plaintiff, telling Plaintiff that he would see a doctor soon. (*Id.*) Later that day, Plaintiff told the housing unit officer that he was too sick for his scheduled trip to the eye clinic. (*Id.*) Plaintiff then returned to the medical unit where he saw Nurse McGuire, who allegedly sent Plaintiff back to his housing unit, again without seeing a doctor. (*Id.*)

On August 23, 2011, Plaintiff was summoned to RMU for a blood and urine test ordered by Nurse Sullivan. (*Id.* ¶ 28.) That same day Plaintiff also was seen by Dr. Hasen, who did not examine Plaintiff. (*Id.* ¶ 29.) Instead, Dr. Hasen told the nurse to give Plaintiff Ensure and send him back to his housing unit. (*Id.*)

On August 28, 2011, Plaintiff again requested that he be sent to RMU. (*Id.* ¶ 30.) Plaintiff felt weak, dizzy, confused, and hungry; was vomiting; and was experiencing shortness of breath and abdominal pain. (*Id.*) The nurse on duty in the infirmary contacted Dr. Midelton, and per Dr. Avanzato, Plaintiff was admitted for prolonged constipation. (*Id.* ¶ 30.) While Plaintiff was still in the infirmary, on August 31 Dr. Midelton and Dr. Avanzato received more information concerning Plaintiff's bone marrow and renal biopsies. (*Id.* ¶ 31.) Together, they contacted Dr. Asif to schedule a time for Dr. Asif to see Plaintiff. (*Id.*) The next day, Dr. Midelton ordered a blood test for Plaintiff. (*Id.* ¶ 32.) Plaintiff remained in the RMU infirmary until September 6 and continued to only be treated for constipation. (*Id.* ¶ 33.)

On September 6, 2011, the nurse on duty in the RMU infirmary discovered Plaintiff unresponsive in his bed. (*Id.* ¶ 34.) Doctors Midelton and Asif immediately sent Plaintiff to the Mount Vernon Hospital emergency room. (*Id.*) Plaintiff went into a cardiac arrest in the ambulance but was resuscitated and rerouted to the Westchester County Medical Center emergency room. (*Id.*) Upon admission to Westchester County Medical Center's intensive care

3

unit, Plaintiff was placed on a respirator. (*Id.* ¶ 35.) Plaintiff was placed on dialysis three days a week and began chemotherapy treatment. (*Id.* ¶ 36.) Plaintiff remained at Westchester County Medical Center for two months, where he was diagnosed with light chain multiple myeloma and kidney failure, and was transferred back to Fishkill on November 18, 2011. (*Id.* ¶ 37.)

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The

4

court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I.    Eighth Amendment Claims

Plaintiff's present cause of action pursuant to 42 U.S.C. § 1983 relates to Defendants' alleged failure to properly diagnose Plaintiff's medical condition in 2011 during his incarceration at Fishkill. "Because Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citation and internal quotation marks omitted).

The Cruel and Unusual Punishments clause of the Eighth Amendment forms the basis of a convicted prisoner's claim that he or she is not being provided adequate medical care. *Est v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). An Eighth Amendment claim of inadequate medical care requires a demonstration of "deliberate indifference to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To sustain a claim of deliberate indifference, a plaintiff must allege that (1) <u>objectively</u>, the deprivation of adequate medical care was sufficiently serious, and (2) <u>subjectively</u>, defendants acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Salahuddin v. Goord*, 467 F.3d 263, 279–81 (2d Cir. 2006). "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted).[2] For the subjective prong, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind." *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted). *See also Hathaway*, 99 F.3d at 553 (observing that "negligent malpractice do[es] not state a claim of deliberate indifference"). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

As to each defendant, therefore, Plaintiff is required to allege personal involvement in the actions demonstrating deliberate indifference to his medical needs. For the following reasons,

---

[2] For the limited purpose of their motion, Defendants concede that Plaintiff's myeloma constitutes a serious medical condition (objective prong).

6

Plaintiff's allegations of deliberate indifference are sufficient with respect to certain defendants to withstand a motion to dismiss and insufficient as to other defendants.

### a. Dr. Avanzato

Plaintiff's complaint alleges that by virtue of his position as Fishkill's Health Services Director at RMU, Dr. Avanzato had "sole responsibility for providing treatment to the Plaintiff." (Compl. ¶ 39.) However, to successfully allege Section 1983 liability, a plaintiff must demonstrate "personal involvement" and cannot merely rely upon an individual's position of authority. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (holding that liability "requires a showing of more than the linkage in the prison chain of command") (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973)).

With respect to Dr. Avanzato's personal involvement in Plaintiff's treatment, Plaintiff alleges the following: (1) Dr. Avanzato approved Plaintiff's admission to the RMU infirmary (Compl. ¶ 30); (2) Dr. Avanzato contacted Dr. Asif to schedule a time for Dr. Asif to meet with Plaintiff (*Id.* ¶ 31); and (3) Dr. Avanzato reviewed Plaintiff's medical records and declined to order medical tests or send Plaintiff to an outside hospital, which delayed Plaintiff's medical treatment and aggravated his condition. (*Id.* ¶¶ 40–41.) Far from demonstrating a deliberate indifference to Plaintiff's medical needs, the first two allegations tend to show Dr. Avanzato proactively treated Plaintiff. At most, Plaintiff's third allegation amounts to a difference of opinion with regards to Dr. Avanzato's course of treatment. However, "a mere 'difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.'" *McFadden v. Goord*, 172 F.3d 38 (2d Cir. 1999) (quoting *United States ex. rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (citation and internal quotation marks omitted)). Dr. Avanzato's limited interactions with Plaintiff are well within the range of

reasonable medical care and certainly do not rise to a level of deliberate indifference, which requires a culpability above mere negligence. Therefore, the Court dismisses the claim against defendant Avanzato.

### b. Dr. Supple

Dr. Supple examined Plaintiff eight days *after* Bio Reference Laboratory allegedly notified RMU that Plaintiff was in acute renal failure and faced imminent danger of death without a blood transfusion. Though Dr. Supple examined Plaintiff for cuts and stab wounds; diagnosed him as anemic and informed him he would need a blood transfusion; and took a urine sample from Plaintiff to examine it for blood, Dr. Supple informed Plaintiff that he did not have a real medical emergency and sent him back to the housing unit. (*Id.* ¶ 19.)

The subjective prong of an Eighth Amendment claim requires a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. "[I]n order for the defendant's mental state to fall within this definition, he need not know that the harm will result from his act or omission, but must know that there is a substantial risk of such a result." *Candelaria v. St. Agnes Hosp.*, No. 01-cv-8594 (LTS) (RLE), 2010 WL 1221874, at *4 (S.D.N.Y. Mar. 29, 2010) *aff'd sub nom. Candelaria v. Baker*, 464 F. App'x 21 (2d Cir. 2012) (citing *Farmer*, 511 U.S. at 839–40). Viewed in the light most favorable to Plaintiff, the facts support an inference that Dr. Supple was aware of a substantial risk of harm to Plaintiff—death by acute renal failure—and disregarded such risk by informing Plaintiff that he had no real medical emergency. The allegations as against Dr. Supple are sufficient at this stage to state a claim for deliberate indifference to Plaintiff's medical ailments in violation of the Eighth Amendment.

### c. Dr. Hasen

Like Dr. Supple, Dr. Hasen interacted with Plaintiff in the RMU after the Bio Reference Laboratory notified RMU of Plaintiff's acute renal failure. Bearing in mind the Court's obligation to construe *pro se* pleadings liberally, Plaintiff alleges that RMU, and therefore Dr. Hasen, knew of Plaintiff's acute renal failure and deliberately disregarded it by electing not to examine Plaintiff, directing the nurse on duty in RMU to give Ensure to Plaintiff, and sending Plaintiff back to his housing unit. (Compl. ¶ 29.) Therefore, with respect to Plaintiff's claim against Dr. Hasen, the Court finds that Plaintiff has sufficiently alleged the subjective element of an Eighth Amendment claim to withstand Defendants' motion to dismiss.

### d. Dr. Midelton

The Complaint alleges that after receiving information concerning Plaintiff's bone marrow and renal biopsies, Dr. Midelton contacted Dr. Asif to schedule a time for Plaintiff to see Dr. Asif. (Compl. ¶ 31.) Additionally, Dr. Midelton ordered a blood test for Plaintiff. (*Id.*) Further, when the on-duty nurse in the RMU infirmary discovered Plaintiff unconscious in his bed, Dr. Midelton sent Plaintiff to the Mount Vernon Hospital emergency room. (*Id.* ¶ 34.) Defendants argue, and the Court agrees, that these allegations support a finding that Dr. Midelton took affirmative steps to treat Plaintiff. Plaintiff additionally asserts that Dr. Midelton's decision to discharge Plaintiff from the RMU infirmary on August 11, 2011 contravened Fishkill's procedures. However, "the violation of [facility] Standards does not, on its own, violate a prisoner's constitutional rights." *Townsend v. Clemons*, No. 12-cv-03434 (RJS) (SN), 2013 WL 818662, at *9 (S.D.N.Y. Jan. 30, 2013) *report and recommendation adopted*, No. 12-cv-03434 (RJS) (SN), 2013 WL 868605 (S.D.N.Y. Mar. 4, 2013) (citing *Gamble v. City of New York ex rel. N.Y.C. Dep't of Corr.*, 04-cv-10203 (TPG), 2009 WL

3097239, at *5 (S.D.N.Y. Sept. 25, 2009); *Myers v. City of New York*, No. 11-cv-8525 (PAE), 2012 WL 3776707, at *6 (S.D.N.Y. Aug. 29, 2012) *aff'd*, 529 F. App'x 105 (2d Cir. 2013)). Thus, the Court finds that dismissal of Plaintiff's § 1983 claim as against Dr. Midelton is appropriate.

### e. Dr. Asif

Plaintiff alleges that Dr. Asif delayed Plaintiff's chemotherapy treatment, resulting "in serious and permanent injury to Plaintiff." (*Id.* ¶¶ 52–53.) The complaint, however, does not specify how exactly Dr. Asif caused this delay nor the extent of the delay. In any event, "a delay in treatment does not necessarily invoke the Eighth Amendment. The Second Circuit has 'reserved such a classification for cases in which, for example officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days, or delayed major surgery for over two years.'" *Espinal v. Coughlin*, No. 98-cv-2579 (RPP), 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002) (quoting *Demata v. New York State Corr. Dept. of Health Servs.*, 1999 WL 753142 at *2, 198 F.3d 233 (2d Cir. Sept. 17, 1999) (citations omitted)). Viewed in the light most favorable to Plaintiff, it is reasonable to infer that Dr. Asif, in delaying Plaintiff's chemotherapy treatment, ignored a life-threatening and fast-degenerating condition—acute renal failure. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claim as against Dr. Asif.

### f. Nurse Simons

Like Doctors Supple and Hasen, Nurse Simons examined Plaintiff at the RMU infirmary subsequent to his diagnosis with acute renal failure. Plaintiff alleges that at the RMU infirmary, Nurse Simons ignored Plaintiff's complaints that he was weak, dizzy, short of breath, and had been vomiting and sent Plaintiff back to his housing unit without requesting that a doctor

10

examine Plaintiff at that time, instead informing him that a doctor would see him "soon." (Compl. ¶ 25). In light of Plaintiff's diagnosis of acute renal failure, Nurse Simons' failure to have a doctor examine Plaintiff constitutes a conscious disregard of a substantial risk of serious harm. Accordingly, the Court declines to dismiss the Eighth Amendment claim against Nurse Simons.

### g. Nurse McGuire

The factual allegations against Nurse McGuire are nearly identical to those against Nurse Simons; in short, Nurse McGuire sent Plaintiff back to his housing unit without first having a doctor examine him. (Compl. ¶ 25.) For the same reasons as above, the Court declines to dismiss the Eighth Amendment claim against Nurse McGuire.

### h. Nurse Sullivan

Plaintiff asserts that Nurse Sullivan's decisions not to order daily or weekly blood tests, admit Plaintiff to the infirmary, send Plaintiff to the emergency room, order a blood transfusion, or refer Plaintiff to a kidney doctor constitute deliberate indifference to Plaintiff's medical condition. (Compl. ¶ 68.) However, such decisions all fall within the ambit of the exercise of medical judgment. "The prisoner's right is to medical care— not the type or scope of medical care which he personally desires." *McGinnis*, 429 F.2d at 867. While Nurse Sullivan may not have elected to treat Plaintiff in the manner in which he believes his medical conditions should have been addressed, Nurse Sullivan did not disregard an excessive risk to Plaintiff's health and safety. To the contrary, the Complaint discloses that Nurse Sullivan ordered blood and urine tests for Plaintiff. (Compl. ¶¶ 12–14, 28.) The Court therefore dismisses the claim against Nurse Sullivan.

## II.     Qualified Immunity

The Court next turns to the issue of whether Doctor Supple, Doctor Hasen, Doctor Asif, Nurse Simons, and Nurse McGuire are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11-cv-7450 (PKC) (HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity); *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (defendant asserting qualified immunity defense at motion to dismiss stage "faces a formidable hurdle . . . and is usually not successful.").

Because Plaintiff has pled facts at this stage establishing that Doctor Supple, Doctor Hasen, Doctor Asif, Nurse Simons, and Nurse McGuire violated his constitutional right, the issue of whether these defendants are entitled to qualified immunity turns on whether the right was clearly established and whether it was objectively reasonable for those defendants to believe their conduct was lawful. Prisoners have clearly established rights "to be free from deliberate

indifference to serious medical needs." *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (citing *Estelle*, 429 U.S. at 104). With respect to whether these defendants objectively believed their conduct was lawful, or whether they had "fair warning of the unconstitutionality of the conduct," "the Second Circuit has repeatedly held as unlawful denials of treatment that 'cause or perpetuate pain' falling short of torture and not resulting in death." *Kearsey v. Williams*, No. 99-cv-8646 (DAB), 2005 WL 2125874, at *7 (S.D.N.Y. Sept. 1, 2005) (quoting *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)). The Courts finds that these defendants had "ample warning that the law prohibits a prison doctor [or nurse] from consciously withholding medical care from an inmate with a painful and potentially fatal medical condition" such as acute renal failure. *Kearsey*, 2005 WL 2125874, at *7. Therefore, at this stage of the litigation, Defendants Doctor Supple, Doctor Hasen, Doctor Asif, Nurse Simons, and Nurse McGuire are not entitled to qualified immunity, and Plaintiff may proceed with his action as against those defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's claims against Doctor Avanzato, Doctor Midelton, and Nurse Sullivan and DENIED with respect to Plaintiff's claims against Doctor Supple, Doctor Hasen, Doctor Asif, Nurse Simons, and Nurse McGuire. Defendants Doctor Supple, Doctor Hasen, Doctor Asif, Nurse Simons, and Nurse McGuire are directed to file an answer within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on March 11, 2016 at 10:00 a.m. Parties are further directed to submit a completed case management plan. The Court respectfully directs the Clerk to terminate the motion at ECF No. 25.

Dated:   January 13, 2016  
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge